1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT
9              EASTERN DISTRICT OF CALIFORNIA
10

11   JOHN DENECOCHEA,                    No.  2:13-cv-01906-MCE-CKD

12              Plaintiff,

13        v.                             **MEMORANDUM AND ORDER**

14   SCOTT BALAND, et al.,

15              Defendants.

16

17        Proceeding on his Third Amended Complaint,[1] Plaintiff John DeNecochea

18   ("Plaintiff") seeks over $10,000,000 in damages stemming from his arrest for driving

19   under the influence.  There are three motions to dismiss pending before the Court.  ECF

20   Nos. 54, 55, 60.  For the reasons that follow, Defendants Baland, Hawkinson, and

21   Martens's Motion to Dismiss (ECF No. 54) is GRANTED in part and DENIED in part,

22   Defendants Sutter Memorial Hospital and Fairman's Motion to Dismiss (ECF No. 55) is

23   ///

---

[1] Plaintiff has filed <u>four</u> documents titled "Third Amended Complaint."  <u>See</u> ECF Nos. 48, 50, 56, 57.  Because Plaintiff had previously amended his complaint, he was required to obtain either Defendants' consent or the Court's leave before filing the second, third, and fourth iterations of the "Third Amended Complaint" (i.e., ECF Nos. 50, 56, 57).  <u>See</u> Fed. R. Civ. P. 15(a).  There is no indication that Defendants consented to the filing of those iterations, and the Court did not grant Plaintiff leave to file them; in fact, Plaintiff did not even seek leave to file the subsequent versions.  Accordingly, the second, third, and fourth iterations of the "Third Amendment Complaint" (ECF Nos. 50, 56, 57) are disregarded and hereby STRICKEN.  The Court interprets the pending motions to dismiss as requesting dismissal of the operative "Third Amended Complaint" that Plaintiff filed on January 2, 2015 (ECF No. 48) ("TAC").

1

1  GRANTED, and Defendants American Medical Response and Pham's Motion to Dismiss

2  (ECF No. 60) is GRANTED.[2]

3

4                                      **BACKGROUND**[3]

5

6         Plaintiff was driving his vehicle in downtown Sacramento, California at

7  approximately 1:00 a.m. on August 23, 2012.  At that time, California Highway Patrol

8  ("CHP") officers Hawkinson and Martens (collectively, "the officers") initiated a traffic

9  stop.  Although Plaintiff claims he did not violate any law, the officers stated that they

10  initiated the traffic stop upon observing Plaintiff's failure to stop at a red light.  The

11  officers asked Plaintiff to exit his vehicle.  Plaintiff had no visible injuries when complying

12  with that request.  The officers then instructed Plaintiff "to step off to the side, outside of

13  the view of" the CHP vehicle's video recording system.  Although the officers conducted

14  field sobriety tests "[o]ff camera," the recording system captured a "loud crash." The

15  source of that crash was the officers, without provocation, throwing Plaintiff to the

16  ground.

17         The officers placed Plaintiff into the back seat of the CHP vehicle.  The TAC is

18  unclear as to what exactly happened next:  Plaintiff states that the officers took him to

19  the jail and that he "was not booked due to medical issues," but also that Hawkinson

20  called for an ambulance to take Plaintiff from the jail to Defendant Sutter General

21  Hospital ("the Hospital") because Plaintiff was "on the floor of a jail cell and vomit[ing]."

22  TAC at 4-5.

23         In any event, Defendant American Medical Response ("AMR") sent an ambulance

24  to transport Plaintiff from the jail to the Hospital.  Hawkinson joined Plaintiff and

25  Defendant Dat Pham, a paramedic employed by AMR, inside the ambulance.  During the

26  ───────────────

         [2]  Because oral argument would not have been of material assistance, the Court ordered this

27  matter submitted on the briefs.  See E.D. Cal. Local R. 230(g).

         [3]  The following statement of facts is based entirely on the allegations in the TAC, see ECF No. 48,

28  and should not be construed as a judicial finding of facts.

1   trip to the Hospital, Hawkinson requested that  Pham obtain a sample of Plaintiff's blood.

2   Pham's first attempt, which was made without Plaintiff's consent, a warrant, or the

3   permission of Hawkinson's supervising sergeant,[4] was unsuccessful.  Plaintiff was

4   handcuffed during this first and all subsequent attempts to obtain a blood sample.

5        When the ambulance arrived at the sally port of the Hospital, Hawkinson asked

6   Pham to again attempt to obtain a sample of Plaintiff's blood.  To assist Pham with this

7   second attempt, Hawkinson climbed on the stretcher, straddled Plaintiff, and told Plaintiff

8   that he would "(F…) him up" if Plaintiff did not cooperate.  TAC at 5.  Hawkinson placed

9   his "full weight" on Plaintiff's shoulder while straddling him, which caused Plaintiff injury.

10   TAC at 6.  Martens also assisted Pham by bending Plaintiff's right-hand fingers back to

11   gain Plaintiff's compliance.  Despite the efforts of Pham, Hawkinson, and Martens,

12   Plaintiff's flailing prevented Pham from obtaining a blood sample on this second attempt.

13        Plaintiff was then admitted to the Hospital.  Hawkinson requested that Defendant

14   Adam Fairman, a nurse employed by the Hospital, obtain a sample of Plaintiff's blood.

15   Although Fairman's first attempt was unsuccessful, he successfully injected a shot of

16   Ativan (a sedative) into Plaintiff's inner thigh.

17        Fairman subsequently made another attempt to obtain a sample of Plaintiff's

18   blood.  Velcro-straps now restrained Plaintiff's arms and wrists to the railing of his

19   gurney, and Plaintiff was still in handcuffs.  Fairman swabbed the blood draw site with a

20   disinfecting swab and prepared to insert a needle to obtain five vials of Plaintiff's blood;

21   the first three vials were for hospital laboratory purposes, and the other two were for

22   Hawkinson's investigatory purposes.  To assist Fairman, Martens bent Plaintiff's right-

23   hand thumb, index, and middle finder until they were severely dislocated and touching

24   the back of Plaintiff's wrist.  Martens subjected Plaintiff to that hold for one to two

25   minutes, in which time Fairman completed the blood draw.

26   ///

27

28

---

[4]  Plaintiff did not consent to any of the subsequent attempted blood draws, and no Defendant ever obtained a warrant or the permission of a supervising sergeant to draw Plaintiff's blood.

1    The officers spoke with Fairman after he completed the blood draw.  The officers

2  informed Fairman "how alcohol swabbing could cause problems in obtaining a conviction

3  and any civil lawsuit."  TAC at 8.  After that discussion with the officers, Fairman entered

4  false data into the medical records system by representing that he had used iodine, not

5  alcohol, when swabbing the blood draw site.[5]

6    Although the TAC does not specify exactly when, it appears that Plaintiff was

7  released from the Hospital later on August 23, 2012.  As a result of his injuries, Plaintiff

8  had to hire additional staff to operate his construction business.  Plaintiff was unable to

9  "obtain a full night of normal sleep for a period of several months" after his arrest, and he

10  has received medical bills for treatment that he did not consent to.  TAC at 12.

11    A jury subsequently convicted Plaintiff of driving under the influence.  Through this

12  action, he alleges the following causes of action:  assault, battery, defamation, unlawful

13  search and seizure, intentional infliction of emotional distress, and conspiracy to violate

14  Plaintiff's civil rights.  Although not specifically identified as a cause of action, the TAC

15  also invokes 42 U.S.C. § 1983.

16

17                                    **STANDARD**

18

19    On a motion to dismiss for failure to state a claim under Federal Rule of Civil

20  Procedure 12(b)(6)[6], all allegations of material fact must be accepted as true and

21  construed in the light most favorable to the nonmoving party.  Cahill v. Liberty Mut. Ins.

22  Co., 80 F.3d 336, 337-38 (9th Cir. 1996).  Rule 8(a)(2) "requires only 'a short and plain

23  statement of the claim showing that the pleader is entitled to relief' in order to 'give the

24    [5] The TAC also includes allegations regarding Hawkinson's purportedly false police report.  Those

25  allegations are omitted from this statement of facts because any causes of action based on those
   allegations—namely, several of the defamation claims in the TAC—would be subject to dismissal.  See

26  Via v. City of Fairfield, 833 F. Supp. 2d 1189, 1199 (E.D. Cal. 2011) ("plaintiff's causes of action against
   Officer Williams based on his preparation of a false police report and recommendation that criminal

27  charges be filed would nonetheless be subject to dismissal under California Government Code section
   821.6").

28    [6] All subsequent references to "Rule" are to the Federal Rules of Civil Procedure.

                                         4

1   defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell

2   Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41,

3   47 (1957)).  A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require

4   detailed factual allegations.  However, "a plaintiff's obligation to provide the grounds of

5   his entitlement to relief requires more than labels and conclusions, and a formulaic

6   recitation of the elements of a cause of action will not do."  Id. (internal citations and

7   quotations omitted).  A court is not required to accept as true a "legal conclusion

8   couched as a factual allegation."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting

9   Twombly, 550 U.S. at 555).  "Factual allegations must be enough to raise a right to relief

10  above the speculative level."  Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright &

11  Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the

12  pleading must contain something more than "a statement of facts that merely creates a

13  suspicion [of] a legally cognizable right of action")).

14          Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket

15  assertion, of entitlement to relief."  Twombly, 550 U.S. at 555 n.3 (internal citations and

16  quotations omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard

17  to see how a claimant could satisfy the requirements of providing not only 'fair notice' of

18  the nature of the claim, but also 'grounds' on which the claim rests."  Id. (citing Wright &

19  Miller, supra, at 94, 95).  A pleading must contain "only enough facts to state a claim to

20  relief that is plausible on its face."  Id. at 570.  If the "plaintiffs . . . have not nudged their

21  claims across the line from conceivable to plausible, their complaint must be dismissed."

22  Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge

23  that actual proof of those facts is improbable, and 'that a recovery is very remote and

24  unlikely.'"  Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

25          A court granting a motion to dismiss a complaint must then decide whether to

26  grant leave to amend.  Leave to amend should be "freely given" where there is no

27  "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice

28  to the opposing party by virtue of allowance of the amendment, [or] futility of the

1    amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v.

2    Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to

3    be considered when deciding whether to grant leave to amend).  Not all of these factors

4    merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . .

5    carries the greatest weight."  Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

6    185 (9th Cir. 1987)).  Dismissal without leave to amend is proper only if it is clear that

7    "the complaint could not be saved by any amendment."  Intri-Plex Techs. v. Crest Group,

8    Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006,

9    1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir.

10   1989) ("Leave need not be granted where the amendment of the complaint . . .

11   constitutes an exercise in futility . . . .")).

12

13                                    **ANALYSIS**

14

15       **A.  The Officers' Motion to Dismiss (ECF No. 54)**[7]

16       The officers advance several arguments in their Motion to Dismiss.  The Court will

17   address each in turn.

18                           **1.  Eleventh Amendment Immunity**

19       The officers first argue that the Eleventh Amendment to the United States

20   Constitution bars all claims against the State of California and California Highway Patrol,

21   and all claims against the officers in their official capacity.  Although Plaintiff filed an

22   Opposition to the officers' Motion, the Opposition did not address the officers' Eleventh

23   Amendment argument.  Additionally, the caption of the fourth and most recent iteration

24   of "Third Amended Complaint" (ECF No. 57) omits both the State of California and

25   California Highway Patrol as defendants, and makes clear that Plaintiff is suing the

26   officers "as individuals."  In light of Plaintiff's apparent non-opposition, the officers'

---

27          [7]  In the statement of facts, "the officers" referred to just Hawkinson and Martens; for the
28   remainder of this Order, "the officers" refers to Hawkinson, Martens, and Defendant Baland.  Baland is a
     CHP sergeant and supervisor of Hawkinson and Martens.

1   Motion is GRANTED to the extent it seeks dismissal of all claims against the State of

2   California and California Highway Patrol and all claims against the officers in their official

3   capacity.  This dismissal is with prejudice.

4               **2.  Heck**

5        The officers also argue that Heck v. Humphrey, 512 U.S. 477 (1994), bars

6   Plaintiff's § 1983 claims based on the forced blood draw.  In Heck, the Supreme Court

7   held:

8              [I]n order to recover damages for allegedly unconstitutional
           conviction or imprisonment, or for other harm caused by
9           actions whose unlawfulness would render a conviction or
           sentence invalid, a § 1983 plaintiff must prove that the
10          conviction or sentence has been reversed on direct appeal,
           expunged by executive order, declared invalid by a state
11          tribunal authorized to make such determination, or called into
           question by a federal court's issuance of a writ of habeas
12          corpus . . . .  A claim for damages bearing that relationship to
           a conviction or sentence that has not been so invalidated is
13          not cognizable under § 1983.  Thus, when a state prisoner
           seeks damages in a § 1983 suit, the district court must
14          consider whether a judgment in favor of the plaintiff would
           necessarily imply the invalidity of his conviction or sentence;
15          if it would, the complaint must be dismissed . . . .

16

17   Id. at 486-87.  The Ninth Circuit has consistently held that the "Heck bar" applies to §

18   1983 claims based on alleged Fourth Amendment violations when the allegedly unlawful

19   seizure of evidence was used to secure a conviction.  See Szajer v. City of L.A., 632

20   F.3d 60, 611-12 (9th Cir. 2011); Whitaker v. Garcetti, 486 F.3d 572, 583-85 (9th Cir.

21   2007); see also Backus v. Gissel, 491 F. App'x 838, 839 (9th Cir. 2012) (citing Szajer for

22   the proposition "a claim alleging an illegal search and seizure of evidence that was used

23   to secure a conviction necessarily implies the invalidity of that conviction"); Kassab v.

24   San Diego Police Dept., 441 F. App'x 476, 477 (9th Cir. 2011) (same).

25        Here, Plaintiff alleges that the forced blood draw was a violation of his Fourth

26   Amendment rights under Missouri v. McNeely, 133 S. Ct. 1552 (2013).  But Plaintiff was

27   convicted of driving under the influence and evidence relating to the forced blood draw

28   was introduced at his criminal trial.  See TAC, Exs. 8-9 (transcripts of Hawkinson,

7

1   Martens, Pham and Fairman's trial testimony); <u>Swartz v. KPMG, LLP</u>, 476 F.3d 756, 763

2   (9th Cir. 2007) ("In ruling on a 12(b)(6) motion, a court may generally consider only

3   allegations contained in the pleadings, exhibits attached to the complaint, and matters

4   properly subject to judicial notice.").  If Plaintiff were to prevail on his § 1983 challenging

5   the blood draw, the finding would necessarily imply the invalidity of his criminal

6   conviction.  Accordingly, the officers' Motion is GRANTED to the extent that it seeks

7   dismissal of Plaintiff's § 1983 claim challenging the forced blood draw.[8]  The dismissal of

8   that claim is without prejudice.  <u>See</u> <u>Trimble v. City of Santa Rosa</u>, 49 F.3d 583, 585 (9th

9   Cir. 1995) (per curiam).[9]

10                               **3.  Baland**

11         Baland seeks dismissal on the ground that Plaintiff has not alleged his personal

12   participation in any of the alleged constitutional deprivations.  <u>See generally</u> <u>Taylor v.</u>

13   <u>List</u>, 880 F.2d 1040, 1045 (9th Cir. 1989) ("Liability under section 1983 arises only upon

14   a showing of personal participation by the defendant.").

15         The TAC includes just two allegations relating to Baland's involvement.  First, the

16   TAC states that Baland "had no contact with the plaintiff but rather he failed to train or

17   supervise Defendant Hawkins [sic] and Defendant Martens."  TAC at 3.  Second, the

18   TAC states that Baland "had been at the jail and might have witnessed events in

19   question."  TAC at 10.  Additionally, in his Opposition to the officers' Motion, Plaintiff

20   claims Baland was present "at the time of the forced blood draw and ratified it in

21   advance."  ECF No. 63 at 25.

22         Plaintiff's allegations are insufficient to establish Baland's personal participation in

23   the alleged constitutional deprivations.  First, Plaintiff has inadequately stated a failure to

24   train claim against Baland.  Not only has Plaintiff not established Baland's actual or

25   constructive notice of an inadequate training program, Plaintiff has not alleged a pattern

26         [8]  This finding obviates the need to analyze whether <u>McNeely</u> applies retroactively and whether
27   Plaintiff has adequately stated a § 1983 claim under <u>McNeely</u>.

          [9]  Plaintiff's unsupported suggestion that <u>Heck</u> "has no effect on California Vehicle Code
28   [c]onvictions" is entirely without merit, and the Court will not further address it.

1    of similar constitutional violations.  See Connick v. Thompson, 131 S. Ct. 1350, 1360

2    (2011) ("A pattern of similar constitutional violations by untrained employees is 'ordinarily

3    necessary' to demonstrate deliberate indifference for purposes of failure to train. . . .

4    Without notice that a course of training is deficient in a particular respect,

5    decisionmakers can hardly be said to have deliberately chosen a training program that

6    will cause violations of constitutional rights.").  Second, although the TAC states that

7    Baland was at the jail and "might have witnessed events in question," the TAC does not

8    state any causes of action arising from Plaintiff's time at the jail.  Lastly, Plaintiff's

9    suggestion that Baland ratified and was present for the forced blood draw is insufficient

10   to establish Plaintiff's personal participation.  Not only are those allegations not in the

11   TAC, but, as explained above, Heck bars any § 1983 claim challenging the blood draw.

12        Accordingly, the officers' Motion is GRANTED to the extent that it seeks dismissal

13   of Baland.  The dismissal of the claims against Baland is without prejudice.

14                          **4.  Plaintiff's State-Law Claims**

15        The officers further argue that because the TAC does not state a cause of action

16   arising under federal law, the Court should dismiss Plaintiff's state law claims.  The

17   premise underlying that argument, however, is inaccurate.  The TAC adequately states §

18   1983 claims against Hawkinson and Martens for throwing Plaintiff to the ground during

19   the traffic stop,[10] for their uses of force during the second attempt to obtain a sample of

20   Plaintiff's blood, and for Martens's use of force during the fourth attempt to obtain a

21   blood sample.  Accordingly, the Court declines to dismiss Plaintiff's state-law claims

22   because the TAC does in fact state a cause of action arising under federal law.

23              **B.  The Hospital and Fairman's Motion to Dismiss (ECF No. 55)**

24                          **1.  The Hospital**

25        The Hospital seeks dismissal from this action on the grounds that Plaintiff has not

26   alleged claims against it.  The closest Plaintiff comes to stating a cause of action against

27   _____

28        [10]  The Court notes, however, that Plaintiff should specify which officer threw him to the ground in the event he files a Fourth Amended Complaint.

                                        9

1    the Hospital is the allegation that "[v]arious Sutter [p]ersonnel" committed battery by way

2    of their "wrongful use of medical procedures without consent."  TAC at 19.  Even if

3    Plaintiff had sufficiently stated a battery claim against the Hospital, his claim would be

4    barred under California Code of Civil Procedure section 340.5, which provides:

5
6                    In an action for injury or death against a health care provider
                 based upon such person's alleged professional negligence,
                 the time for the commencement of action shall be three years
7                after the date of injury or one year after the plaintiff discovers,
                 or through the use of reasonable diligence should have
8                discovered, the injury, whichever occurs first.

9    See also Cal. Code Civ. Proc. § 340.5(1)-(2) (defining "health care provider" and

10   "professional negligence"); Larson v. UHS of Rancho Springs, Inc., 230 Cal. App. 4th

11   336, 351 (2014) (explaining that claims labeled as intentional torts may nonetheless be

12   claims "based on professional negligence within the meaning of section 304.5").

13            Section 340.5 applies here because the Hospital is indisputably a health care

14   provider, and because Plaintiff alleges an injury based on the Hospital's professional

15   negligence—specifically, the Hospital's "wrongful use of medical procedures without

16   consent."  Plaintiff therefore had one year from the time that he discovered his injury to

17   commence this action against the Hospital.  Plaintiff was subjected to the alleged

18   professional negligence and released from the Hospital on August 23, 2012; accordingly,

19   he had until August 23, 2013 to commence this action.  Because Plaintiff did not

20   commence this action until September 12, 2013, the Court must dismiss Plaintiff's

21   battery claim against the Hospital as untimely.  Additionally, because that is the only

22   claim alleged against the Hospital, the Hospital is DISMISSED as a Defendant in this

23   action.  Because Plaintiff cannot save the claim by way of amendment, the dismissal is

24   with prejudice.

25                          **2.  Fairman**

26            Fairman seeks dismissal of the assault, battery, and intentional infliction of

27   emotional distress claims alleged against him on the grounds that those claims are

28   untimely under section 340.5.  Fairman is a healthcare provider, and Plaintiff's claims

1    against him are based on professional negligence.  Specifically, the TAC makes clear

2    that Fairman "engaged in medical treatment in the form of a blood draw <u>for the purpose</u>

3    <u>of his medical lab testing</u> . . . ."  TAC at 24; <u>cf.</u> <u>Larson</u>, 230 Cal. App. 4th at 351 (finding

4    intentional tort claims were based on professional negligence because the "allegations

5    challenge the manner in which [defendant] rendered the professional health care

6    services he was hired to perform; they do not allege intentional torts committed for an

7    ulterior purpose").  Plaintiff was subjected to Fairman's alleged assault, battery, and

8    intentional infliction of emotional distress on August 23, 2012; he therefore had until

9    August 23, 2013 to commence this action.  Because Plaintiff did not commence this

10   action until September 12, 2013, the Court must dismiss these causes of action alleged

11   against Fairman.

12       The Court must also dismiss the defamation claim against Fairman as untimely.

13   Defamation actions must be brought within one year.  Cal. Code Civ. Proc.  § 340(c).  A

14   defamation claim accrues upon "the first general distribution of the publication to the

15   public," and "the statute of limitations will begin to run regardless of whether a plaintiff is

16   aware that he has a cause of action."  <u>Cusano v. Klein</u>, 264 F.3d 936, 949 (9th Cir.

17   2001) (internal quotation marks omitted).  Here, the contested statements appear to

18   have been made on August 23, 2012; Plaintiff therefore had until August 23, 2013 to file

19   his defamation claim.  Because Plaintiff did not commence this action until September

20   12, 2013, the Court must dismiss the defamation claim as untimely.  The dismissal is

21   with prejudice.[11]

22       Fairman also argues that to the extent Plaintiff alleges a § 1983 claim against him,

23   that claim is barred under <u>Heck</u>.  For the reasons stated in the analysis of the officers'

24   Motion to Dismiss, <u>Heck</u> bars any § 1983 claim based on the alleged forced blood draw.

25   ///

26

27       [11]  The TAC alleges several defamation claims, each of which is either alleged against the officers, Fairman, or other employees of the Hospital.  The defamation claims against the officers are dismissed with prejudice as both untimely and inadequately pled.  <u>See</u> note 5, <u>supra</u>.  The claims against Fairman

28   and other employees of the Hospital are dismissed with prejudice as untimely.

1    Lastly, Fairman seeks dismissal of the conspiracy claim alleged against him on

2   the grounds that the claim is inadequately pled.  The Court, however, need not

3   determine whether the TAC sufficiently states a conspiracy claim because the claim is

4   barred under Heck.  Specifically, Plaintiff alleges that Fairman, the officers, and other

5   employees of the Hospital reached an agreement "to falsify information in police and

6   medical reports for the purpose of aiding in wrongfully convicting Plaintiff of violating the

7   DUI statutes of California and to avoid successful prosecution of a civil rights lawsuit

8   against the police officers involved in this case."  TAC at 25-26.  But Plaintiff's success

9   on such a claim—which would require proof of an agreement to violate his constitutional

10   rights and an actual deprivation of his constitutional rights as a result of the alleged

11   conspiracy[12]—would necessarily imply the invalidity of his conviction for driving under

12   the influence.  See Cooper v. Ramos, 704 F.3d 772, 784-85 (9th Cir. 2012) (finding Heck

13   barred a § 1983 claim based on a "broad conspiracy to obtain [plaintiff's] conviction"

14   because "[t]he heart of the third claim is an effort to attack the integrity of the

15   investigation and trial.  Successfully litigating [plaintiff's] claims of an evidence tampering

16   conspiracy would necessarily implicate the validity of his state criminal conviction.");

17   Guerrero v. Gates, 442 F.3d 697, 702-03 (9th Cir. 2006) (finding Heck barred a § 1983

18   claim based on a "conspiracy of 'bad behavior'" because plaintiff's success on that claim

19   would necessarily imply the convictions that resulted from the alleged conspiracy).  This

20   rationale requires the Court to dismiss the conspiracy claim as to the officers and the

21   other Hospital employees alleged to have participated in the conspiracy.  The dismissal

22   of the conspiracy claim is without prejudice.  See Trimble, 49 F.3d at 585.

23    To summarize, the Hospital and Fairman's Motion to Dismiss is GRANTED.  The

24   battery claim against the Hospital is DISMISSED, and the Hospital is DISMISSED from

25   this action; both dismissals are with prejudice.  The assault, battery, intentional infliction

26   of emotional distress, and defamation claims against Fairman are also DISMISSED with

27

28   [12]  See generally Hart v. Parks, 450 F.3d 1059, 1071-72 (9th Cir. 2006); Franklin v. Fox, 312 F.3d 423, 441 (9th Cir. 2002).

1   prejudice.  The § 1983 conspiracy claim is DISMISSED, without prejudice, as to all

2   defendants.

3       **C.  AMR and Pham's Motion to Dismiss (ECF No. 60)**

4       AMR and Pham seek dismissal of all claims alleged against them (specifically,

5   battery, assault, and conspiracy to deprive Plaintiff of his constitutional rights).  As

6   previously explained, Heck bars Plaintiff's conspiracy claim.[13]  Because the battery and

7   assault claims against AMR and Pham are untimely under section 340.5, the Court must

8   dismiss those claims as well.

9       Again, section 340.5 requires that injury actions against health care providers

10  based on alleged professional negligence be brought within one year after the plaintiff

11  discovers the injury.  Section 340.5 applies because AMR and Pham are health care

12  providers[14] and because Plaintiff's assault and battery claims against them are based on

13  alleged professional negligence.  Plaintiff knew of the alleged injury on August 23, 2012;

14  he therefore had until August 23, 2013 to commence this action.  Because Plaintiff did

15  not file this action until September 12, 2013, his assault and battery claims against AMR

16  and Pham must be dismissed with prejudice.

17

18                              **CONCLUSION**

19

20      For the reasons stated above:

21          1.  The officers' Motion to Dismiss (ECF No. 54) is GRANTED in part and

22              DENIED in part.  Specifically:

23  ///

24  ///

25  _____

26      [13]  The Court also notes that AMR and Pham's actions appear to have preceded the alleged
     agreement to violation Plaintiff's civil rights.

27      [14]  See generally Canister v. Emergency Ambulance Serv., 160 Cal. App. 4th 388, 395-404 (2008)
     (explaining that emergency medical technicians and ambulance companies are health care providers
28   under section 304.5).

      a.  All claims against the State of California and California Highway Patrol, and all claims against the officers in their official capacity are DISMISSED with prejudice.

      b.  The § 1983 claim based on the forced blood draw is DISMISSED with prejudice as to all defendants.

      c.  The § 1983 "failure to train" claim against Baland is DISMISSED without prejudice.

      d.  The Motion, however, is DENIED to the extent that it seeks dismissal of Plaintiff's state-law claims.

2.  The Hospital and Fairman's Motion to Dismiss (ECF No. 55) is GRANTED.

      a.  The battery claim against the Hospital is DISMISSED, and the Hospital is DISMISSED from this action; both dismissals are with prejudice.

      b.  The assault, battery, intentional infliction of emotional distress, and defamation claims against Fairman are also DISMISSED with prejudice.

      c.  The § 1983 conspiracy claim is DISMISSED, without prejudice, as to all defendants.

3.  Defendants American Medical Response and Dat Pham's Motions to Dismiss (ECF No. 60) is GRANTED.

      a.  The battery and assault claims against them are DISMISSED with prejudice.

      b.  AMR and Pham are DISMISSED from this action; both dismissals are with prejudice.

Not later than twenty (20) days following the date this Order is electronically filed, Plaintiff may, but is not required to, file a Fourth Amended Complaint.[15]  If no amended

---

[15]  This Memorandum and Order grants leave to file just <u>one</u> Fourth Amended Complaint.  Should Plaintiff's counsel desire to file multiple iterations of a Fourth Amended Complaint, she must comply with Federal Rule of Civil Procedure 15(a).

1   complaint is filed, this case will proceed on the § 1983, battery, assault, and intentional

2   infliction of emotional distress claims against Hawkinson and Martens in the Third

3   Amended Complaint (ECF No. 48).  Specifically, those claims are based on Hawkinson

4   and Martens's throwing of Plaintiff to the ground during the traffic stop,[16] Hawkinson and

5   Martens's use of force during the second attempt to obtain a sample of Plaintiff's blood,

6   and Martens's use of force during the fourth attempt to obtain a blood sample.[17]

7           IT IS SO ORDERED.

8   Dated:  September 8, 2015

9

10

11   _____
          MORRISON C. ENGLAND, JR., CHIEF JUDGE
12        UNITED STATES DISTRICT COURT

13

14

15

16

17

18

19

20

21

22

23

24

25   _____

26       [16]  As previously stated, Plaintiff should specify exactly which officer threw him to the ground if he
     files a Fourth Amended Complaint.

27       [17]  To the extent the TAC also alleges Hawkinson and Martens initiated the traffic stop without
     probable cause and seeks to assert a § 1983 claim based on that allegation, Heck would bar the claim,
28   which is hereby DISMISSED without prejudice.  See Szajer, 632 F.3d at 611-12.