UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOHN DENECOCHEA,<br><br>Plaintiff,<br><br>v.<br><br>CALIFORNIA HIGHWAY PATROL; SERGEANT SCOTT BALAND; OFFICER STEVEN HAWKINSON; OFFICER GREG MARTENS, ADAM FAIRMAN; SUTTER GENERAL HOSPITAL; COUNTY OF SACRAMENTO; STATE OF CALIFORNIA; John Does 1-100,<br><br>Defendants. | No. 2:13-cv-01906-MCE-CKD<br><br>**MEMORANDUM AND ORDER** |

In his currently operative Third Amended Complaint ("TAC"), filed on January 2, 2015,[1] Plaintiff John DeNecochea ("Plaintiff") seeks over $10,000,000 in damages stemming from his arrest for driving under the influence. By Memorandum and Order filed October 10, 2015, this Court adjudicated three different motions to dismiss. It

---

[1] Plaintiff actually filed <u>four</u> documents titled "Third Amended Complaint." See ECF Nos. 48, 50, 56, 57. Because Plaintiff had previously amended his complaint, he was required to obtain either Defendants' consent or the Court's leave before filing the second, third, and fourth iterations of the "Third Amended Complaint" (i.e., ECF Nos. 50, 56, 57). See Fed. R. Civ. P. 15(a). There is no indication that Defendants consented to the filing of those iterations, and the Court did not grant Plaintiff leave to file them; in fact, Plaintiff did not even seek leave to file the subsequent versions. Accordingly, the second, third, and fourth iterations of the "Third Amendment Complaint" (ECF Nos. 50, 56, 57) were stricken by the Court's Order of September 9, 2015 (ECF No. 72).

1

granted motions filed on behalf of Defendants Sutter Memorial Hospital, Adam Fairman, American Medical Response, and Dat Pham. It also dismissed all claims against the California Highway Patrol, the State of California, and the individually named officers to the extent they were sued in their official capacities. Given the fact that the County of Sacramento had previously been dismissed by Stipulation and Order of dismissal filed May 14, 2014, unless Plaintiff chose to file a further amended complaint, the Court's September 9, 2015, Order (ECF No. 72) specified that Plaintiff's Complaint could proceed only on the § 1983 battery, assault, and intentional infliction of emotional distress claims against Hawkinson and Martens in the TAC.[2]

Plaintiff filed a Fourth Amended Complaint on September 28, 2015 (ECF No. 74), as well as a Motion for Reconsideration (ECF No. 77) seeking clarification as to certain aspects of the prior September 9, 2015 Order. The Court thereafter provided clarification by way of a November 10, 2015, Amended Memorandum and Order (ECF No. 79) which, in turn, ordered both the Fourth Amended Complaint and the answer filed by Defendants Hawkinson and Martens to the Fourth Amended Complaint (ECF No. 75) stricken. While the Court gave Plaintiff an opportunity to file a Fifth Amended Complaint, he chose not to do so. Consequently, the TAC filed January 2, 2015, (ECF No. 48) became the operative pleading 20 days after the Court's November 10, 2015, Order was filed when no Fifth Amended Complaint was forthcoming.

Presently before the Court is Plaintiff's Motion to Strike the answer to the TAC filed on August 8, 2016, by Defendants Hawkinson and Martens once the pleadings were resolved. As set forth below, that Motion is DENIED, except that Defendants will be afforded leave to amend their answer to clarify certain paragraphs contained therein.[3]

///

---

[2] Plaintiff's § 1983 "failure to train" claim against Baland was dismissed, without prejudice, as was the § 1983 conspiracy claim against all defendants.

[3] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing in accordance with Local Rule 230(g).

2

# BACKGROUND[4]

Plaintiff was driving his vehicle in downtown Sacramento, California, at approximately 1:00 a.m. on August 23, 2012. At that time, California Highway Patrol ("CHP") officers Hawkinson and Martens (collectively, "the officers") initiated a traffic stop. Although Plaintiff claims he did not violate any law, the officers stated that they initiated the traffic stop upon observing Plaintiff's failure to stop at a red light. The officers asked Plaintiff to exit his vehicle. Plaintiff had no visible injuries when complying with that request. The officers then instructed Plaintiff "to step off to the side, outside of the view of" the CHP vehicle's video recording system. Although the officers conducted field sobriety tests "[o]ff camera," the recording system captured a "loud crash." The source of that crash was the officers, without provocation, throwing Plaintiff to the ground.

The officers placed Plaintiff into the back seat of the CHP vehicle. The TAC is unclear as to what exactly happened next: Plaintiff states that the officers took him to the jail and that he "was not booked due to medical issues," but also that Hawkinson called for an ambulance to take Plaintiff from the jail to Defendant Sutter General Hospital ("the Hospital") because Plaintiff was "on the floor of a jail cell and vomit[ing]." TAC, at 4-5.

In any event, Defendant American Medical Response ("AMR") sent an ambulance to transport Plaintiff from the jail to the Hospital. Hawkinson joined Plaintiff and Defendant Dat Pham, a paramedic employed by AMR, inside the ambulance. During the trip to the Hospital, Hawkinson requested that Pham obtain a sample of Plaintiff's blood. Pham's first attempt, which was made without Plaintiff's consent, a warrant, or the

///

---

[4] The following statement of facts is based entirely on the allegations in the TAC, see ECF No. 48, and should not be construed as a judicial finding of facts.

permission of Hawkinson's supervising sergeant,[5] was unsuccessful.  Plaintiff was handcuffed during this first and all subsequent attempts to obtain a blood sample.

When the ambulance arrived at the sally port of the Hospital, Hawkinson asked Pham to again attempt to obtain a sample of Plaintiff's blood.  To assist Pham with this second attempt, Hawkinson climbed on the stretcher, straddled Plaintiff, and told Plaintiff that he would "(F…) him up" if Plaintiff did not cooperate.  TAC, at 5.  Hawkinson placed his "full weight" on Plaintiff's shoulder while straddling him, which caused Plaintiff injury.  TAC, at 6.  Martens also assisted Pham by bending Plaintiff's right-hand fingers back to gain Plaintiff's compliance.  Despite the efforts of Pham, Hawkinson and Martens, Plaintiff's flailing prevented Pham from obtaining a blood sample on this second attempt.

Plaintiff was then admitted to the Hospital.  Hawkinson requested that Defendant Adam Fairman, a nurse employed by the Hospital, obtain a sample of Plaintiff's blood.  Although Fairman's first attempt was unsuccessful, he successfully injected a shot of Ativan (a sedative) into Plaintiff's inner thigh.

Fairman subsequently made another attempt to obtain a sample of Plaintiff's blood.  Velcro-straps now restrained Plaintiff's arms and wrists to the railing of his gurney, and Plaintiff was still in handcuffs.  Fairman swabbed the blood draw site with a disinfecting swab and prepared to insert a needle to obtain five vials of Plaintiff's blood; the first three vials were for hospital laboratory purposes, and the other two were for Hawkinson's investigatory purposes.  To assist Fairman, Martens bent Plaintiff's right-hand thumb, index, and middle finder until they were severely dislocated and touching the back of Plaintiff's wrist.  Martens subjected Plaintiff to that hold for one to two minutes, in which time Fairman completed the blood draw.

The officers spoke with Fairman after he completed the blood draw.  The officers informed Fairman "how alcohol swabbing could cause problems in obtaining a conviction and any civil lawsuit."  TAC, at 8.  After that discussion with the officers, Fairman entered

---

[5] Plaintiff did not consent to any of the subsequent attempted blood draws, and no Defendant ever obtained a warrant or the permission of a supervising sergeant to draw Plaintiff's blood.

false data into the medical records system by representing that he had used iodine, not alcohol, when swabbing the blood draw site.[6]

Although the TAC does not specify exactly when, it appears that Plaintiff was released from the Hospital later on August 23, 2012. As a result of his injuries, Plaintiff had to hire additional staff to operate his construction business. Plaintiff was unable to "obtain a full night of normal sleep for a period of several months" after his arrest, and he has received medical bills for treatment that he did not consent to. TAC at 12.

A jury subsequently convicted Plaintiff of driving under the influence. This action ensued. As stated above, once the various challenges to the TAC had been adjudicated, Plaintiff was left with causes of action against the officers in their individual capacities for battery, assault, and intentional infliction of emotional distress, as well as for violations of 42 U.S.C. § 1983.

Although Plaintiff proceeded to file a Fourth Amended Complaint, and while the officers did file an answer to that pleading, both the Fourth Amended Complaint and the officers' Answer were ultimately stricken by the Court on November 10, 2015. Once the new deadline for filing yet another amended pleading, as set forth in the November 10, 2015, Order, passed with no additional amended complaint having been submitted, the TAC filed on January 2, 2015, became the operative pleading. Given the stricken answer to the Fourth Amended Complaint, however, no answer had been submitted by the officers.

On March 28, 2016, more than three months after an answer on behalf of the officers should have been filed, Plaintiff's counsel Wendy Chau wrote an email to defense counsel inquiring who was representing Hawkinson and Martens. Ms. Chau did not suggest that an answer had not been filed until June 13, 2016, after which time

---

[6] The TAC also includes allegations regarding Hawkinson's purportedly false police report. Those allegations are omitted from this statement of facts because any causes of action based on those allegations—namely, several of the defamation claims in the TAC—would be subject to dismissal. See Via v. City of Fairfield, 833 F. Supp. 2d 1189, 1199 (E.D. Cal. 2011) ("[P]laintiff's causes of action against Officer Williams based on his preparation of a false police report and recommendation that criminal charges be filed would nonetheless be subject to dismissal under California Government Code section 821.6.").

counsel for the officers mistakenly responded that they believed the officers had been entirely dismissed from the lawsuit.  Ms. Chau did nothing to correct that misapprehension until August 4, 2016, after another two months had passed.  The next day, counsel for the officers told Ms. Chau that he thought his prior answer protected the officers but, in the meantime, she tried to have their defaults entered.  Chau's initial request for entry of default was rejected by the Court on August 5, 2016, because no proper proof of service for the Summons and Complaint had been provided. ECF No. 83.  Then, on August 8, 2016, before that defect could be rectified, an answer was filed on the officers' behalf.  ECF No. 85.  As stated above, it is that answer that is the subject of the present motion to strike.

**STANDARD**

The Court may strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  "[T]he function of a 12(f) motion to strike is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial...." Sidney-Vinstein v. A.H. Robins Co., 697 F.2d 880, 885 (9th Cir. 1983).  Immaterial matter is that which has no essential or important relationship to the claim for relief or the defenses being pleaded.  Fantasy, Inc. v. Fogerty, 984 F.2d 1524, 1527 (9th Cir. 1993), rev'd on other grounds, 510 U.S. 517 (1994) (internal citations and quotations omitted).  Impertinent matter consists of statements that do not pertain, and are not necessary, to the issues in question.  Id.

Motions to strike are generally disfavored because of the limited importance of pleading in federal practice.  Spring v. Fair Isaac Corp., 2015 WL 7188234 at *2 (E.D. Cal. Nov. 16, 2015).  Such motions are not granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation. Cervantes v. Cemex, Inc., 2014 WL 6090414, at *3 (E.D. Cal. Nov. 13, 2014).

**ANALYSIS**

**A. Timeliness**

Plaintiff's primary argument in moving to strike Defendants' answer is that it was untimely and should be stricken under Rule 12(f) because no motion for extension was filed under Rule 6(b)(1)(B) due to excusable neglect. As the officers point out, however, Plaintiff's Motion to Strike the entirety of their answer on that basis is in effect a request for entry of default unless they can show good cause otherwise.

Under the confusing circumstances this case has presented, with some four different iterations of the TAC, a stricken Fourth Amended Complaint, and an answer to the Fourth Amended Complaint being filed in the meantime, the Court in exercising its discretion will permit the officers' answer to the TAC to stand. Plaintiff's counsel herself has been responsible for much of the confusion concerning the status of the pleadings. In addition, she did not bring the error to defense counsel's attention until some eight months after the deadline for filing an answer had otherwise passed. Moreover, and perhaps even more significantly, Plaintiff's counsel has made no argument that her client has been prejudiced by the delay, or that defendant's late filing was caused by anything other than sincere confusion by defense counsel. Finally, it would make no sense to require defense counsel to go back and file a motion for additional time when the issues have already been presented by this motion.

Consequently, Plaintiff's Motion to Dismiss the officers' Answer on timeliness grounds is DENIED.

**B. Improper Denials**

In addition to attacking the whole of the officers' answer as untimely, Plaintiff also makes various contentions that the denials contained within the answer are improper for various reasons. Most prominently, Plaintiff argues that the officers have improperly made certain denials based on lack of information and belief. He contends taking that position is frivolous since the allegations pertain to the officers directly. Plaintiff then

7

goes on to allege that other denials amount to wrongful claims of law, are presented in bad faith, or are non-responsive.  Finally, Plaintiff argues that to the extent the officers offer a general denial in Paragraph 121 of their answer, that too is improper.

The Court summarily rejects these contentions.  In the first place, Plaintiff's TAC is difficult to respond to since the paragraphs containing the actual causes of action are unnumbered, and since many of the allegations have also been dismissed through prior motion practice.  Secondly, Defendants' answer is sixteen pages long and is replete with admissions, denials, admission as to portions of allegations and denials to the remainder, and denials based on lack of knowledge and/or information.  Moreover, the Court rejects what appears to be an effort on Plaintiff counsel's part to adjudicate this case through a motion to strike Defendants' answer as opposed to the more appropriate procedural vehicle of either a motion for judgment on the pleadings or summary judgment.  At this stage of the proceedings, the Court simply cannot agree that the allegations contained in the officers' answer are impertinent or immaterial.

Nonetheless, the officers have agreed that their answers as set forth in paragraphs 82-85, 88-90, and 110 should be clarified and they will be given leave to file an amended answer to do so.

**C.  Affirmative Defenses**

Plaintiff moves to strike twelve of the affirmative defenses[7] the officers asserted in their answer on various grounds.  An affirmative defense is an "assertion of facts and arguments that, if true, will defeat the plaintiff's . . . claim, even if all the allegations in the complaint are true."  Black's Law Dictionary (10th ed. 2014).  A court may strike an insufficiently pled affirmative defense under Rule 12(f).

District courts in this circuit were previously split on whether the heightened pleading standard that the United States Supreme Court announced in Twombly and

---

[7] Plaintiff's Motion argues that Affirmative Defense Nos. 1, 2, 4-6. 10, 15, 17, 20 and 22-25 should be stricken. While Plaintiff's headings purport to also include Nos. 3 and 16 as subject to being stricken, the body of their argument contains no reference to those defenses and, accordingly, the Court will not consider them.

Iqbal applied to affirmative defenses. Some courts, including this Court, concluded that affirmative defenses were subject to the heightened pleading standard. See, e.g., Wine Group LLC, v. L. & R. Wine Co., No. 2:10-cv-02204-MCE-KJN, 2011 WL 130236, at *2 (E.D. Cal. Jan. 4, 2011); Dodson v. Strategic Rests. Acquisition Co. II, LLC, 289 F.R.D. 595 (E.D. Cal. 2013). Other courts, however, declined to apply the heightened pleading standard to affirmative defenses, citing Wyshak v. City National Bank, 607 F.2d 824, 826 (9th Cir. 1979), for the proposition that the pleadings need only provide the plaintiff "fair notice" of the defense. See, e.g., Kohler v. Staples the Office Superstore, LLC, 291 F.R.D. 464, 468 (S.D. Cal. 2013).

The Ninth Circuit, however, has resolved the split in the district courts. In Kohler v. Flava Enterprises, Inc., the Ninth Circuit explained that "the 'fair notice' required by the pleading standards only require[s] describing [an affirmative] defense in 'general terms.'" 779 F.3d 1016, 1019 (9th Cir. 2015) (quoting 5 Charles Alan Wright & Arthur Miller, Federal Practice and Procedure, § 1274 (3d ed. 1998)).[8] Accordingly, this Court applies the "fair notice" standard, and not the heightened pleading standard identified by Twombly and Iqbal, when evaluating motions to strike affirmative defenses.

As indicated above, Plaintiff here moves to strike numerous affirmative defenses under Rule 12(f). Motions to strike are disfavored in part because of the limited importance of pleading in federal practice. Springer v. Fair Isaac Corp., No. 14-cv-02238-TLN-AC, 2015 WL 7188234, at *2 (E.D. Cal. Nov. 16, 2015). Here, the Court's review of the disputed affirmative defenses is that they do put Plaintiff on notice of the defenses they assert and accordingly pass pleading muster on that basis. One of the asserted defenses is, however, improper. To the extent that Defendants' Affirmative Defense No. 1 simply states that "the complaint and each cause of action therein fail to allege facts sufficient to constitute a cause of action, that simply attacks Plaintiff's prima

---

[8] The specific sentence that the Ninth Circuit quoted in Kohler provides: "As numerous federal courts have held, an affirmative defense may be pleaded in general terms and will be held to be sufficient, and therefore invulnerable to a motion to strike, as long as it gives the plaintiff fair notice of the nature of the defense." Wright & Miller, § 1274 (footnotes omitted).

facie case and need not be pleaded as an affirmative defense.  See Zivckovic v. S. Cal. Edison Co., 302 F.3d 1080, 1088 (9th Cir. 2002) ("A defense which demonstrates that plaintiff has not met its burden of proof is not affirmative defense.").

**CONCLUSION**

Based on all the foregoing, Plaintiff's Motion to Strike Answer (ECF No. 86) is DENIED, except that Defendants will be accorded leave to amend their answer to paragraphs 82-85, 88-90, and 110 for purposes of clarification.

IT IS SO ORDERED.

Dated:  March 17, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE